THE TOWN OF NAMEOKI *et al.* Appellees, *vs.* MINNIE
BUENGER *et al.* Appellants.

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

1. ·EASEMENTS—*owner of servient heritage cannot obstruct natural flow of surface water from dominant heritage.* The owner of
a servient heritage has no right, by embankments or other artificial
means, to obstruct the natural flow of the surface water from the
dominant heritage and thus throw it back upon the latter. (*Gillham* v. *Madison County Railroad Co.* 49 Ill. 484, followed.)

2. SAME—*when a decree enjoining obstruction of water-course
will be affirmed.* Where the defendants admit placing obstructions
in a ditch leading from a tile in a highway dividing the dominant
and servient estates and there is evidence to sustain the finding of
the master and chancellor that this ditch was a natural watercourse and had not been deepened by artificial means, a decree
requiring the removal of the obstructions and restraining defendants from further obstructing the flow of water through the ditch
will be affirmed.

APPEAL from the Circuit Court of Madison county;
the Hon. J. F. GILLHAM, Judge, presiding.

BURTON & BURTON, for appellants.

WARNOCK, WILLIAMSON & BURROUGHS, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellees, the town of Nameoki, by the commissioners
of highways of said town, and Walter Roman, John Wedig, Emil Rammer and Elizabeth Epping, on May 15, 1913,
filed their bill for injunction in the circuit court of Madison county against the appellants, Minnie Buenger, William Wolf, Louis Buenger and Henry Marcum, to restrain
the appellants from further obstructing an alleged natural
water-course, and for an order requiring them to remove
obstructions theretofore placed in said water-course by them
and to restore the water-course to its natural state. The
bill alleges that appellees, other than the town of Nameoki,

own certain farm lands in the town of Nameoki, and that Minnie Buenger, one of the appellants, owns a farm west of and adjoining the farm owned by appellee Walter Roman but separated therefrom by a public highway; that the lands owned by appellees, which lie east of the public highway, are naturally higher than the lands of Minnie Buenger west of the highway, and that the natural flow of water is from the lands of appellees across the highway to and upon the lands of appellant Minnie Buenger and thence to lands adjoining the Buenger lands on the north and west; that upon the lands of appellees Roman, Wedig and Rammer, lying east of the public highway, is located a certain slash or slough; that the surface waters coming on the lands of appellees drain first into said slash or slough and thence westerly through a ditch or water-course leading from said slash through and across the public highway to and upon the lands of appellant Minnie Buenger, and that appellees' lands have been so drained for more than fifty years; that appellants, in June, 1912, and before and since that date, placed and deposited in the ditch or water-course on the lands of Minnie Buenger, dirt, cinders, debris, slag and other obstructions, and caused to be built an embankment or levee across said ditch or water-course at a place about fifty feet west of the highway, whereby the surface and other waters naturally coming upon the highway and upon the lands of appellees, which but for the acts of appellants would have drained and flowed westerly across the highway and upon the lands of Minnie Buenger, were obstructed and caused to back up and remain upon and overflow said highway and a large portion of the lands of appellees, thereby rendering the highway muddy and swampy and the lands of appellees unfit for cultivation and occupancy, and that appellants are threatening to place in said water-course on the lands of Minnie Buenger further and additional dirt, cinders, slag, brush, debris and other obstructions and to build and erect said levee to a greater

height and thereby further obstruct the natural flow of the waters aforesaid.

The answer to the bill states that east of the highway mentioned in the bill there was, in a state of nature, a large amount of wet land claimed to be owned by appellees; that many acres of said land were covered by water during most of the year; that the lands of appellants and those of appellees are part of what is commonly called the American bottoms along the Mississippi river, formed by deposits in times of flood and overflow and composed of sand, silt and similar substances; that the surface of the land consists of natural ridges running north and south and depressions between such ridges; that these ridges act as dams or barriers to the flow of water and in times of low water hold the water back in large quantities, thereby forming ponds, slashes or sloughs; that in times of floods the water naturally overflows such ridges and flows from the north and east across the highway to and upon the lands of Minnie Buenger and thence into a depression or pond on her land west of the highway which has no outlet, and that such overflow water can only escape therefrom by sinking into the soil and by evaporation; that said highway was located across a place where some of the surplus overflow waters flowed in times of flood; that a large amount of water naturally remained east of and adjoining the highway in a slash, slough or pond on the lands of appellees; that formerly a wooden culvert was placed in the said highway, through which surplus and overflow waters flowed from the east to the west to and upon the lands of Minnie Buenger and into the depression or pond on her land; that the appellees, desiring to artificially drain their lands and the pond, slash or slough thereon, began a course of conduct by which they sought to, and did, produce an unnatural condition in said highway; that appellee Walter Roman caused to be dug an artificial channel through and across the highway lower than the natural surface of the adjoining

land and caused to be placed therein a large culvert or tile, so the waters from the slash, pond or slough on appellees' lands could escape and flow to the west through said culvert upon the lands of Minnie Buenger, and without license or authority caused to be dug on the west side of the highway and on the lands of Minnie Buenger an artificial ditch, and thereby and thereafter in times of heavy rains the waters which would have remained in the slash, slough or pond east of the highway were permitted to flow upon the lands of Minnie Buenger, greatly injuring and damaging her lands. The answer states that the appellants thereafter filled up to its natural level the ditch dug by appellee Walter Roman on the lands of Minnie Buenger and thereby restored the lands west of the highway to their natural condition, and that they are merely seeking to maintain the lands at their natural level. The answer charges that some of the appellees have by artificial means drained their lands into the slash east of the highway, and thereby caused the flow of water upon the lands of Minnie Buenger to be unnatural and excessive.

Appellees having filed a general replication to the answer, the cause was referred to the master to take and report proofs and findings as to the law and facts. The master, from the evidence adduced by the respective parties before him, found that appellees' lands east of the highway are higher than the lands of Minnie Buenger west of the highway, and that surface waters naturally drain from the lands of appellees across the highway to and upon the lands of Minnie Buenger; that there is a slash or slough on appellees' lands extending from a point about one hundred feet east of the tile in the public highway to a point about one mile north and east thereof; that the surface waters falling upon appellees' lands naturally drain into said slash and thence westerly through a natural depression across said highway and through a natural drain or water-course upon and across the lands of Minnie Buenger, and that such

natural flow has continued for more than fifty years last
past; that in the cultivation and improvement of their
lands adjoining said slash east of the highway and natu-
rally draining thereinto, certain ditches or furrows have
been made upon the lands of appellee Elizabeth Epping and
lands owned by Martin Bauer, and that said ditches drained
certain low parts of said lands along the line of the natural
flow of the surplus waters falling or coming thereon into
the said slash; that the highway in question was laid out
in 1883, and two or three years thereafter a wooden cul-
vert was placed across the highway opposite the west end
of the said slash or slough to permit the waters from the
slash naturally to cross said highway to and upon the lands
of Minnie Buenger west of .the road, as it had naturally
flowed; that the said culvert was insufficient to receive the
waters naturally drained there, and about 1889 a bridge
of greater capacity, about four feet in width and eighteen
inches in height, was placed in the highway at the same
place, affording a larger opening for the waters draining
westerly; that about 1894 the bridge was removed and a
24-inch tile was substituted therefor and placed across the
highway, the bottom of the tile resting at or near the nat-
ural surface of the ground; that for more than twenty
years prior to the commencement of this suit all waters
coming through said bridge or tile to the west side of the
highway flowed upon and across the lands of Minnie Buen-
ger and no water remained standing on the highway or
under the bridge or in the tile; that for more than forty
years prior to the filing of the bill herein a furrow or ditch
had been made and opened from the westerly end of the
slough on appellees' lands to a point on the highway where
the tile is now located and in the direction of the natural
flow of the surface waters, and said ditch was kept open
by Walter Roman on the lands east of and adjoining the
highway; that no excavating was done by appellees, or any
of them, at any time upon the lands of Minnie Buenger

west of the bridge, culvert or tile; that from 1885 to 1905
no complaint was made by Minnie Buenger or by any of
the appellants concerning the action of the highway com-
missioners in placing the culvert or tile across the highway
but during all of such time they acquiesced in such action
of the commissioners; that in June, 1912, the appellants
placed and deposited in said water-course upon the lands of
Minnie Buenger west of the highway, earth, slag, debris,
etc., beginning about ten feet west of the line of the pub-
lic highway and extending thence westerly about one hun-
dred feet, and by reason thereof the flow of the surface
waters naturally falling and coming upon the highway and
the lands of appellees and naturally flowing across the lands
of Minnie Buenger was obstructed and the waters were
thereby backed up and caused to stand on the public high-
way and along the sides thereof and upon large portions
of the lands of appellees from which they otherwise would
have flowed, and said lands were thereby rendered unfit for
cultivation and occupancy and said highway was thereby
damaged; that in July, 1912, appellants again filled in the
depression, water-course or ravine through the lands of
Minnie Buenger with rocks, bricks, slag and other material,
and in October, 1912, they again built a levee across the
ravine on said land west of the tile; that during the month
of March, 1913, the levee was washed away but the other
material placed in the ravine remained therein, and caused
the water which would have naturally flowed away from
the highway to stand thereon and in the tile across the
highway and upon the lands of appellees east of the high-
way; that the water-course upon the lands of Minnie Buen-
ger westerly from the highway from year to year gradu-
ally widened and deepened by reason of the natural flow of
water through the same, and appellants are claiming the
right to fill up said ditch, water-course or ravine in such
manner as to restore the bottom thereof to the same level it
was before washing away and are contending that they have

only restored such water-course to such level, but the master finds that such water-course has been filled up to a point higher than the natural surface of the earth at the bottom of said ravine or water-course, and that such obstruction causes water to stand upon the highway where it had not stood before such obstruction was placed therein. From these findings the master recommended that a decree be entered requiring appellants to remove from the ravine or water-course upon the lands of Minnie Buenger all slag, earth or other material placed therein and to restore said ravine or water-course to the condition in which it was before such substances were placed therein.

Objections made by appellants to the master's findings were by him overruled, and these objections were renewed as exceptions when the report was filed in court. Some additional evidence was offered by appellants and heard by the chancellor over the objection of appellees, at the conclusion of which, at the request of appellants, the chancellor went upon and viewed the premises, accompanied by the solicitors for the respective parties and two of the appellants, after which the court entered a decree finding the facts substantially as found by the master and perpetually enjoining appellants from placing any slag or dirt in the ditch on the land of Minnie Buenger or otherwise obstructing the same, and ordering them within ninety days to take and remove from the ditch all dirt, slag, debris and other material placed in said water-course by them, and that in default thereof the appellants be considered in contempt of court and dealt with according to law. From that decree the appellants have prosecuted this appeal.

Appellants contend that the proof shows (1) that the tile through which the waters flowed across the highway from the lands of appellees to the lands of appellant Minnie Buenger was placed several inches below the natural surface of the ground; (2) that after the tile was placed in the highway appellee Walter Roman dug or caused to be

dug upon the land of Minnie Buenger a ditch leading west from the tile a distance of several feet; and (3) that some of the appellees, and other owners of lands east of the highway who are not parties to the suit, have within the last twenty years, by artificial ditches and drains, diverted waters into the pond or slough on appellees' lands which in a state of nature flowed in a different direction, and that by reason of these various acts large quantities of water were cast upon the lands of appellants and there remained, rendering their lands unfit for cultivation. The evidence offered by appellants tended to prove all of the contentions so made by them. The evidence offered by appellees, however, tended to prove that the tile across the highway was laid upon the natural surface of the ground; that the ditch on the lands of Minnie Buenger leading west from the tile in the highway was, and has been for at least fifty years, a natural water-course and has been deepened solely by the action of the water flowing through it, and that no waters have by means of artificial ditches or drains been diverted into the pond or slough on the lands of appellees. A large amount of testimony was taken bearing upon these controverted questions of fact, and the evidence given by the respective witnesses relating thereto is irreconcilable. The master, after hearing the testimony, made express findings upon each of the controverted questions of fact, based upon the testimony of the witnesses who testified on behalf of appellees. The chancellor, after considering the evidence taken before the master, heard additional evidence and at the request of appellants went upon and viewed the premises, and in addition to adopting the findings of the master made the following additional finding concerning the alleged diversion of waters into the pond or slough on the lands of appellees: "The court further finds that the natural drainage of the land of complainant Elizabeth Epping, and the land of Martin Bauer adjoining the Epping lands on the south, was always toward and into said slash or

slough, and that the natural drainage of any basins or low places on said Epping or Bauer lands was toward said slash or slough, and that any plow furrows or ravines which may have heretofore, in the interest of good husbandry and for the purpose of better cultivating said lands, been cut from any flat or low places on said Epping or Bauer lands toward and into said slash or slough, were cut in the course of the natural drainage of the surplus or overflow waters from such flat or low places, but the court finds that there are not at this time, and were not at the time of the filing of this suit, any artificial ditches upon said Epping or Bauer lands."

We have carefully considered all the evidence, and have reached the conclusion that we would not be warranted in reversing the decree of the circuit court on the ground that the findings of fact made by the master and chancellor are contrary to the evidence. These findings being in favor of appellees, the relief awarded followed as a matter of course. This court, in *Gillham* v. *Madison County Railroad Co.* 49 Ill. 484, adopted the rule of the civil law that the owner of a servient heritage has no right, by embankments or other artificial means, to obstruct the natural flow of the surface water from the dominant heritage and thus throw it back upon the latter, and this rule has since been consistently followed in this State. Appellants admit that they placed obstructions in the ditch leading west from the tile in the highway, and the finding of the master and chancellor that this ditch was a natural water-course and had not been deepened by artificial means warranted the decree requiring appellants to remove such obstructions and restraining them from further obstructing the flow of water through that ditch.

The decree of the circuit court is affirmed.

*Decree affirmed.*