(No. 15376.—Reversed and remanded.)

GEORGE HARMON et al. Appellants, vs. THE VILLAGE OF
ARTHUR, Appellee.

*Opinion filed June 20, 1923.*

1. SPECIAL ASSESSMENTS—*when assessment cannot be made for
construction of sewer outlet beyond city limits.* As a general rule
a municipality cannot levy an assessment for an improvement out-
side the city limits, and in the construction of a storm-sewer system
property cannot be specially assessed for an outlet sewer beyond
the city limits where the outlet is through the main ditch of a farm
drainage district, which will benefit by the construction of the im-
provement, but to authorize the assessment the outlet should be for
the exclusive use and under the control of the municipality.

2. SAME—*property cannot be assessed more than benefited.* Un-
der the Local Improvement act property cannot be assessed more
than it will be specially benefited, and that is the test for determin-
ing the validity of an assessment, original or supplemental.

3. SAME—*property owners are entitled to know probable cost of
improvement.* The purpose of the engineer's estimate required by
the Local Improvement act before an improvement is undertaken
is to advise the property owners of the probable cost of the im-
provement, and while the estimate need not be absolutely accurate,
it should be of such a nature as to give the property owner a gen-
eral idea as to the cost of the substantial component elements of
the proposed improvement.

4. SAME—*courts may inquire into reasonableness of improve-
ment ordinance.* The reasonableness of the exercise of a legisla-
tive grant of power to a city over the construction of local im-
provements is to be determined by the court as a question of law,
and the rule that an ordinance specifically authorized by statute
cannot be impeached because it is unreasonable does not apply to
an ordinance for the construction of a sewer, passed under a gen-
eral power over the subject, as such grant is subject to the im-
plied limitation that its exercise shall be reasonable.

5. SAME—*property cannot be assessed for subsequent improve-
ment not definitely provided for.* As a special assessment can be
justified only on proof that the proposed work will benefit the prop-
erty, a special assessment cannot be levied for subsequent work for
which no definite provision is made; and where the construction
of a proposed outlet to a storm-sewer system depends on the future
action of drainage commissioners through whose district the out-
let passes beyond the city limits, the city cannot levy a special as-
sessment on property in the city for the proposed improvement.

6. Same—*what determines whether an improvement is local.*
Whether an improvement is local, within the meaning of the con-
stitution and statutes, does not depend upon the fact that there are
incidental or indirect benefits for which an equitable portion of the
cost may be assessed to the municipality, but depends upon the
nature of the improvement and whether the substantial benefits to
be derived are local or general in their nature.

Appeal from the County Court of Douglas county; the
Hon. D. H. Wamsley, Judge, presiding.

Joel T. Davis, for appellants.

Marion Watson, for appellee.

Mr. Justice Carter delivered the opinion of the court:

This is an appeal from the judgment of the county
court of Douglas county overruling the objections of prop-
erty owners and confirming the report of the commission-
ers appointed to ascertain the just compensation to be made
for property taken or damaged for the construction of a
storm-sewer system and outlet therefor and for the assess-
ment of property benefited.

The proceeding was had under the Local Improvement
act enacted in 1897, and included the condemnation of cer-
tain land necessary to be taken for the purpose of the im-
provement. The ordinance passed by the authorities of the
village of Arthur provided for constructing certain sewers
within the village and for building a sewer outside the vil-
lage limits for an outlet within a short distance of a farm
drainage district, wherein there had already been constructed
a ditch and branch thereof for the purpose of draining many
acres of farm land. The proceedings by the board of local
improvements of the village provided for the construction
of the sewers in the village and the outlet sewer, and also
for deepening and widening the main ditch of the drainage
district and a branch thereof for a distance of about four
miles, for the payment of part of the cost of the deepening

and widening of the ditch by the village, and for building
or repairing certain bridges and culverts over and across the
ditch; that an agreement for deepening and widening the
drainage ditch and its branch was entered into by the com-
missioners of the drainage district and the village authori-
ties, the former to decide as to the manner and extent of
such cleaning and widening. The ordinance and the agree-
ment provided that the drainage commissioners could not
be compelled to clean out the main open ditch unless they
did so by contract with the village of Arthur, and that
when it became necessary to clean out or repair the new
open ditch, before the work was done there must be a con-
tract made between the drainage commissioners and the
village authorities, and that the cost of such cleaning out
and widening should be divided between the drainage com-
missioners and the village authorities in a certain propor-
tion. It was also provided that the drainage commissioners
will not be required to let a contract for the cleaning, widen-
ing and repairing of the drainage ditch until $5317.42 has
been deposited by the village authorities with the First Na-
tional Bank of Arthur, with the understanding that said
sum be held by the bank as trustee for the village and the
drainage commissioners, and that as the work of improv-
ing the proposed ditch progresses, especially from the junc-
tion of the main ditch and the branch ditch down-stream
to the outlet of the main ditch, the bank will pay orders
drawn by the drainage commissioners against said fund.
It was also provided that if the village does not deposit
$5317.42 with the First National Bank by August 1, 1923,
the contract "shall come to an end and be null and void."
It appears from the record before us that the whole cost
of the local improvement to be made by the village was
over $35,000, and that of this amount it was to pay the
drainage commissioners for the deepening and widening of
the drainage ditches various sums, amounting to approxi-
mately $6500.

309—7

It was objected in the county court, and the objections are renewed in this court, that the assessment is invalid in providing, under the Local Improvement act, for an improvement in which a part of the work must be done outside of the village and outside of the control of the village authorities, to be paid for by special assessment, and that the improvement is not a local improvement as the constitution and the statutes define such an improvement; that the provisions of the agreement between the drainage commissioners and the village authorities are not so definite and certain as to make them possible of enforcement, and particularly that the village authorities cannot enforce them in this proceeding.

The agreement between the drainage commissioners and the village authorities contains numerous provisions which we will not attempt to set out in detail in view of the conclusion we have reached as to the law concerning the questions involved. The general rule as to local improvements is that a municipality cannot levy an assessment for an improvement outside the city limits. (Mason & Fuller on Special Assessments, 50, and authorities there cited.) It has been more than once said by this court that under the Local Improvement act property cannot be assessed more than it will be specially benefited; that the continuing test in special assessment proceedings, whether original or supplemental, is that the assessment shall not exceed the special benefit to the property assessed. (*Village of Winnetka* v. *Taylor,* 301 Ill. 147; *City of Nokomis* v. *Zepp,* 246 id. 159.) We think it is manifest from the wording of the ordinance drafted by the village authorities for this improvement, in connection with the agreement entered into by the drainage commissioners and the village authorities, that at the present time it is practically impossible to ascertain with any reasonable certainty how much the property owners will be specially benefited by the improvement or how much the property owners will be compelled to pay for deepening

and widening the ditches of the drainage district. The Local Improvement act provides that there shall be an engineer's estimate, made before the improvement is undertaken, as to the cost of the proposed improvement, and we have held that the purpose of that estimate is to advise property owners of the probable cost of an improvement originated by the board of local improvements; (*City of Chicago* v. *Huleatt,* 276 Ill. 466;) that it is not necessary to have this estimate absolutely accurate but only approximately so; that the estimate should be of such a nature as to give the property owner a general idea of what the substantial component elements of the proposed improvement will cost. (*Doran* v. *City of Murphysboro,* 225 Ill. 514.) . Under a statute that has since been superseded by the present Local Improvement act, it was held by this court in *Hundley & Rees* v. *Lincoln Park Comrs.* 67 Ill. 559, that where it appeared from the evidence in the record that a park was to be constructed within the corporate limits of two towns and the property in both the towns was to be assessed to defray the cost and expense of acquiring the land and improving the park, and the assessments were to be paid by the property owners of those towns not to pay for lands lying inside those towns and for improvements to be made within those towns but for lands and improvements outside the corporate limits of such towns, the assessments were illegal. This same rule was applied under the present statute in *Loeffler* v. *City of Chicago,* 246 Ill. 43. In this last case it was urged, as it is here, that the village authorities would have the right to condemn property for a local improvement and construct the same outside of the village limits for the purpose of making an outlet for the sewer, but it was stated on page 54 that "a reading of these decisions shows that they were based upon the theory that the outlet of the sewer was really a part of the improvement and was for the exclusive use of the municipality in question." In this case, as in that, it must be held that the

improvement proposed is not for the exclusive use and under the control of the village authorities. Some of the reasons why such an improvement, to be held valid, should be under the exclusive control and for the sole benefit of the municipality levying the special assessment are stated in detail in the *Loeffler case, supra,* and the reasons there urged apply with full force to this proposed improvement.

It is urged by counsel for the village that under a fair construction of the constitution and the statutes it may be fairly implied that the village authorities had the right to provide for deepening and widening the ditches of the drainage district outside the limits of the village under section 336*a* of the Local Improvement act, (1 Hurd's Stat. 1921, p. 435,) and that the provisions of this ordinance and the other arrangements provided for are fairly within the statute, and therefore it gave authority, at least by implication, to make such arrangements with the drainage commissioners to widen and deepen the drainage ditches. The reasonableness of the exercise of a legislative grant of power to a city over the construction of local improvements is to be determined by the court as a question of law. The rule that an ordinance specifically authorized by statute cannot be impeached because it is unreasonable does not apply to an ordinance for the construction of a sewer passed under a general power over the subject, as such grant is subject to the implied limitation that its exercise shall be reasonable. (*Title Guarantee and Trust Co.* v. *City of Chicago,* 162 Ill. 505.) This court has said that under the Local Improvement act, where property cannot be benefited except in case of subsequent work for which no provision is made the property cannot be specially assessed; (*City of Waukegan* v. *Burnett,* 234 Ill. 460;) that a special assessment on property under the Local Improvement act can only be justified on proof in the record that the work proposed will specifically benefit the property, and that such assessment cannot be legally predicated upon future action

of the public authorities or future legislation. (*Clear Creek Drainage District* v. *Railway Co.* 264 Ill. 640, and cases there cited.) It is clear from the written agreement between the village authorities and the drainage commissioners for making this local improvement, that no definite agreement in this proceeding, and possibly not in any legal proceeding in any court, can be enforced requiring action as to the deepening and widening of the ditches of the drainage district for the purpose of giving an outlet for this storm-sewer system.

Under the reasoning of the authorities just cited, and also some cases referred to and cited in *Clear Creek Drainage District* v. *Railway Co. supra,* it must be held that the action of the village authorities in attempting to levy a special assessment on the property of certain property owners in the village for the purpose of deepening and widening the ditches of the drainage district so as to provide for an outlet for the storm drainage sewer for the village cannot be enforced or held valid under the ordinance, and therefore the county court erred in not sustaining the objections filed by the objectors to the confirmation of this assessment.

It is urged by counsel for the objectors that this improvement is also void because it is not a local improvement, under the reasoning of this court in *City of Waukegan* v. *DeWolf,* 258 Ill. 374. After a review of many authorities and a discussion of the Local Improvement act in that case, it was held that the question as to what is a local improvement is first to be decided by the municipal authorities, but that such decision is not final and binding on the courts; that the decisions of this court demonstrate that the question whether an improvement is a local one within the meaning of the constitution and statutes does not depend upon the fact that there are incidental or indirect benefits for which an equitable portion of the cost may be assessed to the municipality, but does depend upon the nature

of the improvement and whether the substantial benefits to be derived are local or general in their nature.

It is argued by counsel for appellants that the main purpose of this improvement is to benefit all the property of the village of Arthur and not alone the property that is assessed for this particular improvement, and therefore it is not a local improvement. No evidence was taken on the hearing in the county court on this question, and it is impossible to tell from the record before us what property would be benefited by this storm drainage sewer if constructed under the ordinance,—whether all or a large portion of the property of said village or only a small portion; but so far as we can judge from the ordinance and the contract made by the village authorities with the drainage commissioners we are inclined to think that there is much force in the argument of counsel for appellants that this is not a local improvement. In view, however, of our conclusion heretofore stated that these proceedings must be held invalid because they pertain to work under the contract of the village authorities that is not yet definitely provided for in a way that the village authorities can enforce, it is unnecessary for us to consider or decide, on the record, whether or not the improvement in question is local or general. The question whether or not the improvement, under the arrangement with the drainage commissioners to provide for the outlet in the manner proposed by this agreement, could be paid for by general taxes on the property in the village is not before us and need not be considered. It is clear from the record that the widening and deepening of the ditches of the drainage district will benefit some of the property in the district, and therefore, under the reasoning of this court in *Loeffler* v. *City of Chicago, supra,* it is illegal to levy a special assessment against certain of the property within the village to construct such improvement. As was said by this court in that case, on page 54: "True, that part of the sewer in the town of Cicero is to furnish

an outlet for that part of the sewer in the city of Chicago, but it is also for the use and benefit of lands in Cicero adjacent to it." The same may be said here of this proposed improvement as to deepening and widening the ditches in the drainage district.

For the reasons given in the opinion in the *Loeffler case* and the other cases cited, the judgment of the county court will be reversed and the cause remanded to that court, with directions to sustain the objections filed by appellants to the confirmation of the assessment to construct this improvement.   *Reversed and remanded, with directions.*