## County Ditch Drainage and Levee District, Appellee, v. East Side Levee and Sanitary District et al., Appellants.*

1. DRAINAGE—*necessity of specific contract to bind district to maintain ditch*. A resolution passed by a sanitary drainage district while a Farm Drainage Act district including part of it was being formed, that the latter would be of benefit to the former and should have a certain outlet, does not constitute the necessary clear contract to bind the sanitary district to construct and maintain such outlet ditch, in view of its taxes being raised for sanitary drainage and not farm drainage and of only about half of the district benefited paying therefor.

* Received from clerk of Appellate Court, August 8, 1927.

2. ESTOPPEL—*applicability to drainage district.* Estoppel does not ordinarily apply to municipal corporations of the character of drainage districts for which funds must be raised by general taxation on the real and personal property within its boundaries.

3. DRAINAGE—*resolution favoring ditch as not estopping district.* A resolution passed by a sanitary drainage district while part of it with other land was being organized into a Farm Drainage Act district, that the latter should have an outlet ditch, does not estop the former from refusing to expend for the maintenance of such ditch taxes to benefit those in nowise contributing thereto.

4. DRAINAGE—*mandatory injunction as means to compel drainage ditch maintenance.* A mandatory injunction cannot be asked to compel a sanitary drainage district to remove growths from the outlet ditch of another district for which obstructions it was in no way responsible as an intentional act.

5. DRAINAGE—*propriety of ordering district without funds to clear ditch in a fixed time.* A mandate requiring a sanitary drainage district to clear the outlet ditch of another district within a limited time cannot be sustained where it is neither alleged in the bill nor shown by the proof that the sanitary district has funds for the work.

Appeal by defendants from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the March term, 1925. Reversed and remanded with directions. Opinion filed August 5, 1925.

FAULKNER & MORSE, for appellants.

C. W. BURTON, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee, County Ditch Drainage and Levee District of Madison county, filed its bill in the circuit court of said county against appellant, East Side Levee and Sanitary District, and its trustees, praying a mandatory injunction to compel appellants to clean out and place in repair a certain outlet ditch used by appellee. A demurrer filed to said bill was overruled by the court. Appellants electing to stand by their demurrer, a special master was appointed to whom said cause was referred to take the evidence in proof of the allegations of said bill. Said evidence was taken and re-

ported by said special master, and on consideration of the same, the court entered a decree granting the relief prayed. To reverse said decree, this appeal is prosecuted.

Appellee district was organized in 1913 under the Farm Drainage Act, Cahill's St. ch. 42, ¶ 120 *et seq.* Appellant district was organized in 1908, under an act entitled "An act to create sanitary districts in certain localities and to drain and protect the same from overflow for sanitary purposes," in force July 1, 1907. Appellee district lies wholly within Madison county, and consists of about 5,100 acres. Appellant district lies within Madison and St. Clair counties, and consists of something over 60,000 acres. About one-half of the acreage of appellee district is included within and forms a part of appellant district.

Said bill, among other things, averred that one of the objects of appellant sanitary district "was and is to straighten, deepen, widen and improve the channel of Cahokia Creek through the district, and many miles of said work has been done in the lower and central portion of said district in the vicinity of East St. Louis and south and easterly of Horse Shoe Lake to a point some miles south of the southern limits of the said County Ditch Drainage and Levee District; and the upper part of said Cahokia Creek was turned into the Mississippi River through a diversion channel about two miles north of the Round Pond. * * * that about one-half of the lands in the said County Ditch Drainage and Levee District are also in the East Side Levee and Sanitary District and from the organization of said Sanitary District have been and are now taxed for the purposes of said district and will continue to be taxed for the purposes of said Sanitary District as well as for the uses and purposes of said County Ditch Drainage and Levee District. * * * that when the petition of the land owners in said drainage district was pending and undetermined in the County Court

of Madison county the said East Side Levee and Sanitary District, in order to furnish an outlet for the discharge of the water through the County Ditch from and out of the said drainage district and in order to procure the formation and the order of said court establishing said drainage district, passed certain resolutions and made certain undertakings in and by which it agreed to straighten the channel of Cahokia Creek, dig a new channel to connect with the southerly end of the County Ditch on the south side of the Toledo, St. Louis & Western Railroad, commonly known as the Cloverleaf, which resolutions, orders, agreements, plats and plans for said outlet were then and there on, to wit, March 29, duly filed and presented to the County Court, a copy of which are hereto attached and marked 'Exhibit A,' and in consideration thereof and the other matters and things then and there presented to said Court, an order was thereafter duly entered on May 19, 1913, organizing said County Ditch Drainage and Levee District.''

Said bill further averred that appellee district was thereupon organized and proceeded at once to dig and construct its main drainage channel for a length of about five miles, said work being completed during the year 1914; that for several years said County Ditch channel operated satisfactorily as a drainage project, but for the five years last preceding the filing of said bill, appellant suffered and permitted said outlet channel to become grown up with weeds and willows and to fill up with sand, debris and silt to such an extent that appellee district had no sufficient outlet for the waters flowing in its said ditch, and that same became filled up by back waters, and its value as a drainage ditch and project was wholly destroyed. Said bill further alleged that from time to time appellee notified appellant district, its trustees and attorneys, of the condition of said outlet, and requested said trustees to clean out and repair said outlet so as to take care of

the waters flowing from appellee district, and that they had failed and refused so to do.

The resolution made a part of said bill is as follows:

"Whereas, Various property owners and taxpayers owning land within the East Side Levee and Sanitary District have filed a petition in the County Court of Madison County, Illinois, praying for the origination of a drainage district under the name of the County Ditch Levee and Drainage District; and

"Whereas, It is proposed by the plans of said proposed drainage district, among other things, to dredge a portion of Cahokia Creek from the north in the vicinity of the present outlet of the County Ditch to the south right-of-way line of the Toledo, St. Louis & Western Railway; and

"Whereas, It is a part of the general plan of sanitation and drainage of the East Side Levee and Sanitary District to straighten and deepen the said Cahokia Creek wherever necessary; and

"Whereas, The work of the proposed drainage district above mentioned is in accord with the general scheme of sanitation and drainage of said sanitary district, and will relieve said sanitary district from a large expense; and

"Whereas, The work of the said proposed drainage district will be unavailing for the purposes intended unless additional work is done from the point where the said drainage district and at the said south right-of-way of said Toledo, St. Louis & Western Railroad; and

"Whereas, The chief engineer of the said East Side Levee and Sanitary District has heretofore prepared plans showing the work necessary to be done at said place; now,

"Therefore, it is hereby ordered: That when the County Court of Madison County enters an order completing the organization of the said County Ditch Levee and Drainage District, that the president and

attorneys of the East Side Levee and Sanitary District proceed at once to secure the necessary right-of-way for the work shown on the plans of the said chief engineer above referred to, copy of which said plans are hereto attached, and marked "Exhibit A," and made a part hereof, and that the said chief engineer, upon the securing of said right-of-way, employ a sufficient force to do the work necessary to be done according to said plans and immediately proceed with said work.

"This order shall be in full force and effect from and after its passage and approval."

The court on the hearing on said bill, after making certain findings, entered an order requiring appellant district, "within one hundred and twenty days from the date of this decree, to remove from said outlet channel from the southern end of the ditch of the County Ditch Drainage and Levee District at the Toledo, St. Louis & Western Railroad tracks for a distance of 2,284 feet south from the said point all the silt, dirt, weeds, willows and bushes deposited or growing therein since its construction down to a level of 419 Memphis datum, and to maintain the same in accordance with the original resolution and plan, and to keep the same in reasonable repair and condition as originally constructed as an outlet channel for the waters of said County Ditch, and to restore said outlet channel to its condition, as originally dug and constructed."

The position taken by counsel for appellee, as we understand it, is that appellant district, through its trustees, having passed said resolution pending the organization of appellee district, in and by which said resolution it was recited that the construction of appellee drainage district would be of benefit to appellant district and a saving to said district of certain of its funds, and that the work of appellee district would not be effective without the construction of the outlet in

question, that therefore appellant district bound itself to construct said outlet and to maintain the same.

We are of the opinion and hold that the position of counsel for appellee in this connection is not sound. The taxes raised for the construction and maintenance of appellant district's levees and ditches are levied and extended as general taxes are levied and extended, while it is conceded and the record discloses that only about one-half of the lands in appellee district are included within appellant sanitary district. It therefore follows that only those lands in appellee district which are included within appellant district are taxed in any way for the work in said sanitary district. In other words, if the decree of the trial court should stand, it would compel the expenditure of the funds of the sanitary district, raised by general taxes levied on all of the lands included within the boundaries of said district, to clean out and repair said outlet for the benefit of appellee district, when only about one-half of such lands were being in any way taxed therefor. It also appears from the record that the taxes raised by appellant district are for sanitary and levee purposes, whereas appellee district was organized for drainage purposes under the Farm Drainage Act, Cahill's St. ch. 42, ¶ 120 et seq. So far as the record discloses, the benefits to be derived from the cleaning out and repairing of said outlet may be largely confined to the lands included in appellee district, while the expense for such work would be paid wholly out of the funds of said sanitary district.

It would appear from the authorities that before appellee district could compel the construction or the maintenance of an outlet ditch by appellant, that it must have entered into a definite and specific contract to that effect. (*Clear Creek Drainage & Levee Dist. v. St. Louis, I. M. & S. R. Co.*, 264 Ill. 640; *Harmon v. Village of Arthur*, 309 Ill. 95.)

In *Harmon v. Village of Arthur, supra,* there was a contract of some character between said village and the drainage commissioners of the drainage district into which the sewers of said village emptied. The court at page 101 in discussing this question says:

"It is clear from the written agreement between the village authorities and the drainage commissioners for making this local improvement, that no definite agreement in this proceeding, and possibly not in any legal proceeding in any court, can be enforced requiring action as to the deepening and widening of the ditches of the drainage district for the purpose of giving an outlet for this storm-sewer system."

While said bill alleges an agreement on the part of appellant district to construct said outlet, no proof was made in support of said allegation, and the resolution attached to said bill clearly discloses that no such agreement was made. From the argument of counsel for appellee, both in his written brief and his oral argument, it would appear, inferentially at least, that he is insisting that appellant district and its trustees, by reason of the passage of said resolution during the pendency of the proceeding had in the county court for the organization of appellee district, are estopped from denying the relief prayed for in appellee's bill.

Appellant district is a municipal corporation, a creature of a statute which governs its formation and proceedings. The law of estoppel does not ordinarily apply to corporations of this character where the funds for its operation must be raised by general taxation on the real and personal property included within its boundaries. (*Washingtonian Home of Chicago v. City of Chicago,* 157 Ill. 414, 10 R. C. L. p. 706, sec. 34.) Certainly it must be held that appellant district is not estopped by the resolution in question, where the record shows that it would be expending the funds of said district for the benefit of parties and lands that were in no wise being taxed for said benefits, and that

were in no way contributing toward the expense of such improvement.

Lastly it is contended by counsel for appellant that a mandatory injunction will not lie in this character of case, even though appellee were entitled to the relief prayed.

In answer to this contention and in support of their theory that a mandatory injunction will lie, counsel for appellee cite *Town of Nameoki v. Buenger,* 275 Ill. 423, and *Pradelt v. Lewis,* 297 Ill. 374. Neither of these cases in our judgment, sustains the contention of appellee. In *Town of Nameoki v. Buenger, supra,* the question passed on and determined by the court was with reference to whether or not a mandatory injunction would lie to compel the removal of an embankment constructed by a party to hinder or obstruct the natural flow of water from the dominant to the servient heritage, and the court held that in such a case a mandatory injunction would lie. That is an entirely different situation from the one here involved. It is not here contended that the trustees of appellant district have wrongfully done any overt act obstructing the natural flow of water from the dominant to the servient heritage notwithstanding they are ordered to clean out and repair an outlet ditch which has become filled up by natural accretions, the growth of tree, etc. These are matters with which appellant district had nothing whatever to do, as an overt or intentional act. In the case of *Pradelt v. Lewis, supra,* the court had before it the matter of compelling an adjoining landowner to straighten or remove a certain wall which was leaning over and endangering the property of the adjacent landowner. There is no question but that in a case of that character a mandatory injunction would lie.

It should be further observed in this case that it is not alleged in said bill, nor does it appear in the proofs, that said sanitary district has funds with which to per-

form this work, or to make these repairs, yet the mandate of the court is that said work be done and performed within 120 days from the date of said writ. Certainly an order of this kind cannot be sustained on the record.

The judgment and decree of the trial court will therefore be reversed and the cause will be remanded, with directions to dismiss said bill for want of equity.

*Reversed and remanded with directions.*