HENRY H. GAGE

*v.*

THE CITY OF CHICAGO.

*Opinion filed December 16, 1903—Rehearing denied February 4, 1904.*

1. SPECIAL ASSESSMENTS—*it is conclusively presumed that improvement board's action was voluntary.* It is conclusively presumed that the improvement board acted of its own motion in preparing and submitting an improvement ordinance to the council, and that it treated an order from the council to prepare and submit the ordinance as a mere petition.

2. SAME—*when ordinance is not uncertain in describing asphaltum.* A provision in a paving ordinance that the asphaltum "shall be asphaltum obtained from Pitch Lake, in the island of Trinidad, or asphaltum which shall be equal in quality for paving purposes to that obtained from Pitch Lake," etc., is valid and certain.

3. SAME—*when provision for "back-filling" is valid.* A provision in a paving ordinance for "back-filling" the combined curb and gutter is sufficiently definite where the grade of the street and the height of the curb are given, and the filling is specified to be of earth, to the width of four feet at the top of the curb and even therewith, and to slope down at a specified rate.

4. SAME—*improvement board's resolution need not go into detail.* The resolution of the improvement board must prescribe the "extent, nature, kind, character and estimated cost" of the improvement, but a detailed description such as is essential to the validity of the ordinance is not required.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

F. W. BECKER, for appellant.

WILLIAM M. PINDELL, (CHARLES M. WALKER, and EDGAR BRONSON TOLMAN, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a judgment confirming a special assessment levied under the provisions of an ordinance of the city of Chicago providing for plastering sub-walls, constructing granite concrete gutters, a gran-

ite concrete combined curb and gutter, grading, and paving with asphalt, North Wood street from Kinzie street to West North avenue.

It is insisted that the scheme for the improvement of the street was not originated by the board of local improvements. In November, 1900, the board of local improvements had under consideration the advisability of recommending to the city council, for adoption, an ordinance providing for paving North Wood street from Chicago avenue to Milwaukee avenue with paving brick. The board of local improvements had ordered that an estimate be made of the cost of improving that portion of the street with brick. While the board of local improvements were awaiting the estimate of the cost of paving with brick, the city council of the city adopted the following order:

"*Council order Nov. 12, 1900.*—Ordered that the board of local improvements be and they are hereby directed to prepare and submit to this council an ordinance for paving with asphalt North Wood street from Kinzie street to North avenue. Presented by Messrs. Beilfuss, and Maypole, Strauss, Leininger, Kunz, aldermen 14th, 15th and 16th wards.

WM. LOEFLER, *City Clerk.*"

On the 13th day of August, 1901, the board of local improvements entered the following order: "On the recommendation of the secretary the previous order for an estimate for paving with brick Wood street from Chicago avenue to Milwaukee avenue was rescinded, and an estimate ordered, in compliance with the order of council, for paving said street with asphalt, from Kinzie street to North avenue." Afterwards, on the 15th day of April, 1902, the city council adopted an ordinance presented by the board of local improvements, providing for the paving of North Wood street for the distances as prescribed in the order of the city council, and with asphalt as prescribed in said order.

In *Walker* v. *City of Chicago*, 202 Ill. 531, we held the board of local improvements possessed the sole power to

originate a scheme for a local improvement without petition and of its own motion; that the city council had no power to direct or in any way control the board, and that any order or resolution of the city council ordering the board of local improvements to prepare and present an ordinance for an improvement was absolutely void, and that out of the official action of the board of local improvements in preparing and recommending an ordinance to the city council for an improvement, arose a conclusive presumption that the board acted upon its own motion or treated the resolution of the city council as a mere petition. That ruling is applicable to the contention here presented and decides it adversely to the appellant.

The ordinance provided that all asphaltum required to be used in the improvement "shall be asphaltum obtained from Pitch Lake, in the island of Trinidad, or asphaltum which shall be equal in quality for paving purposes to that obtained from Pitch Lake, in the island of Trinidad." It is objected that the ordinance is in this respect uncertain, in that it, to quote from appellant's brief, "gives some one (not named) the discretion to substitute for the asphalt specified, another and different asphalt not specified, and clothes him with authority to judge whether it is equal in quality for paving purposes, —a debatable question, upon which minds might differ according to their interests." This objection is without force. The provision in the ordinance was, no doubt, incorporated therein for the purpose of obviating the objection which was found fatal to an ordinance under consideration in *Fishburn* v. *City of Chicago*, 171 Ill. 338. The ordinance under consideration in the case cited, required that "the cementing material shall be a paving cement prepared from refined Trinidad asphaltum obtained from Pitch Lake, in the island of Trinidad," the effect being, as we there pointed out, to create a monopoly in favor of the corporation which had the absolute

control of the asphaltum obtained from Pitch Lake and to restrict competition in bidding for contracts for the construction of the improvement. We there said (p. 343): "If it be the judgment of the city council that the most suitable and best material to be used in any contemplated improvement is the product of some particular mine or quarry or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so framed as to make such production, substance or compound the standard of quality and fitness, and to require that material equal in all respects to it should be employed."

It is urged, however, that the ordinance under consideration here does not provide that the asphaltum, if other than that obtained from Pitch Lake is used, shall be equal, in all respects, to that from Pitch Lake, but only that it shall be "equal in quality for paving purposes." As the asphaltum was to be used for no other than paving purposes, its quality and fitness for such purpose was all that need be considered. The ordinance did not vest in the contractor, or any other person, power or discretion to determine the quality of asphaltum to be used. The ordinance fixed the standard of quality, and required that the material to be used should be equal to that standard. In *Hintze* v. *City of Elgin*, 186 Ill. 251, an ordinance which provided, "all brick to be used shall be made of pure shale, of equal quality to that found in Galesburg, Glen Carbon and Streator, in the State of Illinois, and Canton, in the State of Ohio," was held to be sufficiently specific.

Nor is the ordinance uncertain as to the depth and quantity of earth with which the combined curb and gutter-flags were required to be "back-filled." The ordinance provided that the curb and gutter should be back-filled with earth, the filling to be of the width of four feet at the top of the curb and even therewith, and to slope down at the rate of one and one-half feet horizontal to

each vertical foot. The ordinance further provided that the upper surface of the gutter-flags should conform to the surface of the finished roadway, and the top edge of the curb should coincide with the grade of said Wood street. The ordinance also fixed the grade of the street, from which the level of the surface of the finished roadway, which depended, of course, upon the conformation of the ground, could be ascertained with certainty. The ordinance contained the necessary data for determining the depth of the back-filling and the quantity of earth necessary to be used in that part of the work.

The ordinance provided that on the layer of Portland cement concrete six inches in thickness there should be laid a binder course of broken limestone mixed with asphaltic cement one and one-half inches in thickness, and upon this a wearing surface composed of carbonate of lime and asphaltic cement. The resolution of the board does not specifically mention the binder course of broken limestone or the wearing surface. For this reason it is urged the improvement described in the ordinance is not that described in the resolution of the board. An ordinance must prescribe the nature, character, locality and description of the improvement. It is not required that the resolution shall prescribe the "description of the improvement," but only the "extent, nature, kind, character and estimated cost" thereof. (4 Starr & Cur. Stat. chap. 24, pars. 43, 44, pp. 151-153.) The resolution here under consideration answered these requirements of the statute, and more minuteness in matter of mere description in the resolution was not necessary.

The judgment is affirmed. *Judgment affirmed.*