THE VILLAGE OF OAK PARK, Appellee, *vs.* THE CHICAGO
AND WEST TOWNS RAILWAY COMPANY, Appellant.

*Opinion filed April 20, 1927.*

1. SPECIAL ASSESSMENTS—*when additional item does not make
estimate vary from ordinance.* As the word "estimate" imports
a calculation not professedly exact, the fact that the engineer's
estimate includes some additional square yards to take care of ir-
regularities in the width of an old brick pavement and in the
width of a street car track therein will not cause a variance be-
tween the estimate and the ordinance for the paving of the street,
which is referred to in the ordinance as the existing roadway paved
with brick.

2. SAME—*when the engineer's estimate is sufficient.* The engi-
neer's estimate is for the purpose of advising the property own-
ers of the probable cost of the improvement, and it is not necessary
that it be absolutely accurate or that it set out in minute detail all
the separate items of material and labor which go into the im-
provement, but it need only set out the substantial component ele-
ments of the improvement so as to give a substantially correct
idea thereof.

3. SAME—*ordinance may refer to existing objects in describing
improvement.* In describing an improvement the ordinance may
refer to existing things that are permanent in their nature as places
or lines from which to measure, and when reference is made to
an object or thing as fixed and existing and which has locality,
width and dimensions the presumption is that it can be found and
located and there is no patent ambiguity in the description.

4. SAME—*ordinance describing improvement may refer to ex-
isting pavement.* An ordinance for the paving of a street, in de-
scribing the improvement, may refer to the existing roadway paved
with brick, as the old pavement is a fixed and definite object, which
has definite locality, width and dimensions.

5. SAME—*when ordinance sufficiently describes curve of curb.*
Although the radius of the curve of the curb at street intersections
is not given in an ordinance for the paving of a street, the statu-
tory requirements are satisfied where the ordinance has attached
to it, and made a part of it by reference, maps and drawings show-
ing the curve of the curb at such intersections.

6. SAME—*curb and gutter item in engineer's estimate need not
show amount of cinders.* An engineer's estimate in a paving im-
provement showing the cost of a "concrete combined curb and

gutter on cinders" is not fatally defective because it does not itemize separately the amount of cinders to be used as a base for the combined curb and gutter.

7. SAME—*when specifications for asphalt are sufficient in paving ordinance.* In an improvement ordinance specifications of materials in the alternative are permissible, and specifications for asphalt in a paving ordinance are not indefinite and uncertain where several different kinds are specified in the alternative, the evidence showing that a contractor complying with the specifications for any one kind must produce a pavement that will not be inferior or insufficient in any way, but one that must stand certain tests provided in the specifications as to penetrability, consistency, ductility and character of the flux for each alternative.

8. SAME—*objection to appointment of commissioner to spread assessment must be made in trial court.* Any objection to the appointment of the commissioner to spread the assessment must be made in the trial court, and where the question is not raised in the motion for new trial or in the motion in arrest of judgment it cannot be raised for the first time on appeal.

9. SAME—*what does not invalidate appointment of commissioner to spread assessment.* The fact that the commissioner to spread the assessment was appointed by the president of the board of local improvements two days before the petition for the improvement was filed does not invalidate the appointment, as section 38 of the Local Improvement act, providing that the assessment shall be made "upon the filing of the petition," refers to the making of the assessment and does not require that the party making the assessment be appointed after the petition is filed.

10. SAME—*objection to the mailing and posting of notices is waived by appearance.* The mailing and posting of notices in a special assessment proceeding are the process by which the property owners are brought into court on the petition for the confirmation of the assessment roll, and any objection to the affidavits of the mailing and posting of notices is waived by general appearance.

APPEAL from the County Court of Cook county; the Hon. I. L. WEAVER, Judge, presiding.

WILLARD M. McEWEN, and BERTHOLD L. GOLDBERG, for appellant.

LEVI H. FULLER, (HARRY L. FEARING, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, the Chicago and West Towns Railway Company, has prosecuted this appeal from a judgment of the county court of Cook county modifying, and confirming as modified, a special assessment against its property for a local improvement in the village of Oak Park.

The proposed improvement is of the roadway of Lake street from the west line of Oak Park avenue to the west line of Austin boulevard, and also the roadways of all intersecting streets and alleys extended from the curb line to the street line produced on each side of Lake street between said points, (except that part of Lake street occupied by street railway,) by constructing a concrete combined curb and gutter on cinders, grading and paving the present roadway with an asphalt wearing surface and binder course on five inches of Portland cement concrete swept with Portland cement, grading and paving (except present roadway) with an asphalt wearing surface and binder course on eight inches of Portland concrete cement swept with Portland cement, constructing and connecting new brick catch-basins complete, adjusting sewer man-holes and catch-basins and constructing and connecting catch-basin inlets, furnishing and setting cast-iron man-hole covers, adjusting abutting sidewalks and abutting pavements, at an estimated total cost of $139,000. The street to be paved had formerly been paved with brick. It had been paved by two different improvements, one of which had been constructed about thirteen years and the other about fifteen years before the present ordinance was passed. One of these improvements had a combined curb and gutter on each side of the brick pavement, while the other had only a straight stone curbing on each side of the brick. As we understand the record, the brick pavement having the combined curb and gutter was 36 feet wide, and including the gutter was 38 feet wide when measured from inside of curb to inside of curb. The other improvement was also

38 feet wide from the inside to inside of the stone curbing, leaving the brick pavement 38 feet wide. The proposed improvement as shown by the ordinance is to be 50 feet wide from inner face of curb to inner face of curb, the gutter on each side of the pavement to be 12 inches in width.

The petition for the local improvement, accompanied by the recommendation of the board of local improvements, the estimate of the work to be done and its probable cost, and the ordinance with plans and drawings attached showing the location of the proposed improvement, was filed by the village. The commissioner appointed to spread the assessment assessed appellant's property, described as lots 6, 7, 9, 10, 11 and 12 and the east 182 feet of the west 625½ feet of block 38 in Wm. Beye's re-subdivision in Oak Park, in Cook county, Illinois, at the total sum of $5911.90. Various legal objections, and the further objection that the property was assessed more than its proportionate share and more than it would be benefited, were filed by appellant. By agreement of the parties a hearing was had before the court, without a jury, on all objections. The court overruled all legal objections and confirmed all of the assessments against appellant's property except the last tract above described, which was assessed at $2410.10. The assessment on that tract was reduced by the court to $1606.70.

Appellant contends that the ordinance and the engineer's estimate of the cost of the improvement are void because of variances between the ordinance and the estimate. The basis of one of these contentions is, that the ordinance merely exempts that part of Lake street occupied by the street railway, and that by the franchise ordinance the width of the street railway is 16 feet 8 inches, and that the engineer, instead of exempting 16 feet 8 inches from his estimate for the railway, exempted 17 feet 4 inches. The engineer who made the estimate at first testified that he exempted 17 feet 4 inches as that part of the street oc-

cupied by the street railway tracks, but later he changed or corrected his evidence by stating that he was mistaken in his statement that he had considered 17 feet 4 inches as the part of the street occupied by the street railway, and that, as a matter of fact, he had considered in his estimate the width of such railway track as 16 feet 8 inches. We have examined the engineer's testimony, and we think it clearly appears therefrom that his statement corrected as aforesaid was properly admitted, and that he had really made a mistake as to the width of the railway he had exempted.

The estimate for the paving was in two parts. The first estimate by the engineer is: "Paving present roadway with an asphalt wearing surface and binder course of five inches of Portland cement concrete swept with Portland cement, 13,450 square yards, $4,—$53,800." The engineer testified that his estimate of 13,450 square yards exceeded by 316 square yards his exact figures in making that calculation, and that he added this 316 square yards to take care of irregularities in the width of the street car track and in the width of the old brick pavement. Under the facts in the record we do not think that such a variance is evidence of willfulness, as contended by appellant, as the word "estimate" imports a calculation not professedly exact. The engineer's testimony disclosed that there was quite a variance in the width of the street car tracks and in the width of the old pavement. Therefore there is not such a variance between the ordinance and the estimate as to imply fraud, and we do not think the court erred in overruling this objection. The engineer's estimate that is required by the statute is for the purpose of advising the property owners of the probable cost of the improvement and it need not be absolutely accurate, and it is sufficient if it conveys a substantially correct idea of the component elements of the improvement. It is not necessary for the estimate to set out in minute detail all the separate items

of material and labor which go into the improvement, but it is only necessary to set out the substantial component elements of the improvement. *City of Highland Park* v. *Gail,* 276 Ill. 24; *Village of Ladd* v. *Chicago, Ottawa and Peoria Railway Co.* 283 id. 260; *Harmon* v. *Village of Arthur,* 309 id. 95; *Patton* v. *Village of Palestine,* 304 id. 489.

Appellant argues further that there is shown a variance between the estimate of the engineer and the ordinance because there is a disagreement between them as to the location of the present or old roadway. We do not think that such a disagreement appears in the record. Appellant contends that the ordinance fixes the present width of that roadway as the distance between the faces of the curbs. We think that the ordinance fixes the present roadway as the engineer estimated it or as that part of the street that was paved with brick, and that it does not include the curb and gutter on that part that has a curb and gutter and does not include the stone curb on that portion of it that has simply a stone curb on each side of the brick pavement. This old brick pavement was to be torn up and replaced with an asphalt pavement on a five-inch concrete base. It has been held by this court to be proper in an ordinance of this character to refer to existing things that are permanent in their nature as places or lines from which to measure. When reference is made to an object or thing as fixed and existing which has locality, width and dimensions, the presumption is that it can be found and located, and there is no patent ambiguity in the description. The present roadway, which is paved with brick, is a fixed and definite object which has definite locality, width and dimensions, and the new roadway may be located definitely by reference to the existing roadway paved with brick. *Ogden, Sheldon & Co.* v. *City of Chicago,* 224 Ill. 294.

The ordinance does not in terms state that by "present roadway" it means the portion thereof paved with brick, excluding the gutter and curb, but in giving direc-

tions about the reconstruction of this part of the road we find this language in the ordinance: "The present roadway of said Lake street from the west line of Oak Park avenue to the west line of Austin boulevard, (except that part of said Lake street occupied by street railway,) and also the roadways of all intersecting streets and alleys extended from the curb line to the street line produced on each side of Lake street (except that part of the intersection of Harvey avenue occupied by street railway) between said points, shall be prepared for receiving the pavement hereinafter provided for by removing therefrom all existing brick pavement, by spiking and shaping and by filling all depressions in the existing macadam foundation of the present roadway of said Lake street between said points with the same kind of material as hereinafter specified for concrete base; that after being thoroughly rolled with a roller of ten-tons weight until the road-bed is thoroughly compacted, and after the pavement hereinafter described shall have been placed thereon, the surface of the finished pavement where it joins that part of said roadway occupied by street railway on each side of said street railway in said Lake street shall be two inches above the established grade of said Lake street and at the center of the finished roadways of all intersecting streets," etc. This direction in the ordinance indicates positively that the improvement of the old roadway is to be the exact width of the old brick pavement on that roadway, and the engineer's estimate was made exactly in accordance with this designation. The ordinance further provides that "a foundation of Portland cement concrete five inches thick shall be laid upon *the roadbeds thus prepared* between said points and between the outer edge of the present roadway and the space occupied by the street railway." By "present roadway" in this last quotation is meant the present roadway that is paved with brick, because it is that portion of the present roadway that was to be torn up and prepared as directed in the first

quoted portion of the ordinance. In the very next paragraph of the ordinance we find this direction as to the new part of the proposed roadway that is to be added and paved: "A foundation of Portland cement concrete, eight inches thick shall be laid upon the road-beds thus prepared between said points and between the roadway edge of the gutter laid as herein provided and the outer edge of the present roadway on said Lake street." By the words "outer edge of the present roadway," used as they are in connection with the language before quoted, is meant the outer edge of the present roadway that is paved with brick. The engineer made his estimate exactly in accordance with this idea as to the new pavement to be added, and estimated its width as the distance between the outer edge of the present roadway that is paved with brick and the roadway edge of the new gutter that is to be laid. Our conclusion therefore is that there is no variance in the ordinance and in the estimate as to either of the two parts to be paved, as contended by appellant.

For the same reasons we do not think appellant's contention that the estimate is excessive and fails of itemization as to either the new pavement added on the side of the roadway or as to the pavement on the present or old roadway paved with brick should be sustained. Where an improvement of a public street is to be made either by paving with brick or with concrete cement or other paving, which contains a combined curb and gutter on the side or simply a curb on the side of the pavement, the roadway of such improvement is usually understood to be the width of the improvement measured from inner curb to inner curb. While that is true, it is also true in such improvements that the combined curb and gutter, or the curb when a curb only is used, is laid on a different base from that of the pavement between the roadway edges of the gutter or between the inner faces of the curb when a curb only is used. That base is often formed or made with cinders, as is the com-

bined curb and gutter of the proposed new improvement, which is to be 50 feet wide from inner curb to inner curb. The direction in the present ordinance as to the pavement to be constructed on the present or old roadway was given for the purpose of designating the width of the pavement that was to be constructed on the present or old roadway. The width of the pavement to be constructed was the width of the brick pavement in each of the two parts of the old pavement for the reason advanced by the engineer, as we think, and because it was only that part of the present roadway that was paved with brick that had the concrete foundation that was to be "prepared" for laying the new pavement. For the foregoing reason the ordinance did not undertake to state what the width was of the present or old roadway, but designated that part of it that was to be prepared and paved on a five-inch concrete base as distinguished from the new part of the pavement that was to have an eight-inch concrete base. Reading the ordinance with this idea of those who framed it, it designates clearly what portion of the new improvement is to be constructed with an eight-inch concrete base and what portion of it is to be constructed with a five-inch concrete base. The parts of the improvement to be paved are necessarily of different widths, because the brick pavement in the present or old improvement had two different widths of brick pavement under which the five-inch concrete base is to be constructed. The estimates of the engineer as to the cost of the improvement are therefore made in accordance with the provisions of the ordinance and there is no variance between them in any particular, and all objections based on the assumption of such variances were properly overruled.

It is further insisted that the ordinance is void because it is indefinite and uncertain and did not show the curve of the curb at the street intersections. The radius of the curve of the curb at street intersections is usually given in the ordinance, and that may be the better practice. However,

in this case the ordinance had attached to it and made a part of it by reference, maps and drawings which showed the curve of the curb at such intersections. That was sufficient to meet the statutory requirements.

The engineer's estimate contained this item: "Concrete combined curb and gutter on cinders, 11,000 lineal feet at $1.25,—$13,750." It is insisted by appellant that the estimate is fatally defective because it did not itemize separately the amount of cinders to be used as a base for the combined curb and gutter. In *Hulbert* v. *City of Chicago,* 213 Ill. 452, the estimate was similar in all particulars and was sustained by this court over the same objection. The cases of *City of Waukegan* v. *Wetzel,* 261 Ill. 498, and *Lyman* v. *Town of Cicero,* 222 id. 379, do not overrule that case but merely distinguish it from those cases in which the estimate did not specify that the combined curb and gutter was to be on cinders. The estimate in this case is sufficient.

The estimate also contains this item: "Adjusting 7500 square feet of abutting sidewalks." The ordinance provides that "the sidewalks abutting on said Lake street, where necessary, shall be so adjusted as to conform to the curb elevations hereinbefore described." Appellant's contention that the word "abutting" means adjoining or contiguous and must necessarily refer to sidewalks on property outside of and adjacent to the street to be improved cannot be sustained. That description does not leave it to the engineer to determine where the adjustment shall take place and is not subject to the construction that it requires constructing new sidewalks. The ordinance prescribes the grade of the top edge of the curb on each side of the roadway and between definite points fixed in the ordinance. The words used in the ordinance could have reference only to those sidewalks which would abut the improvement, and any engineer or contractor would understand readily what is meant by the words used in the ordinance.

It is also contended by appellant that the specifications and descriptions of the asphalt used in the ordinance are vague and uncertain and permit wide deviations in quality and the making of an inferior and insufficient pavement, and that for those reasons the ordinance is unreasonable and void. The specifications for the asphalt cover more than four pages in the abstract. These specifications provide for alternative kinds of asphalt that may be used in the pavement, but in doing so provide for the character and kind of each alternate and provide tests that shall be used as to the penetrability, consistency, ductility and character of the flux for each alternate. The specifications also provide the mixtures of the refined asphalts and the residuum flux to be used in the various mixtures. Harry W. Skidmore, a civil engineer and expert on specifications for asphaltic dressings, testified for the village that from his experience there would be no material basis for the selection of any one particular brand of material for use in paving the street with asphalt provided all of the materials complied with the specifications of the ordinance, and that the durability and serviceability of a pavement properly constructed, using any asphalt that complies with the specifications of the ordinance, would be just as good as any other that is specified. Charles H. Lamson, who had been in the asphalt paving business for more than forty years and who qualified as an expert in such paving, testified for appellant concerning the various kinds of asphalt and the difference in the price of the various kinds. He stated that different kinds of pavement could be obtained by use of more or less asphaltic cement and also by use of more or less mineral filler, and that the specifications of the ordinance as to the asphaltic mixture to be used was of sufficient variation to permit of a pavement suitable for either heavy, medium or light traffic. He further stated that the tests as to the pavement in the ordinance were standard tests, but because of the variety of the asphalt permitted and of the combi-

nations of the same permitted it was up to the contractor whether the pavement, when so completed, would be suitable for heavy, medium or light traffic, and that if the contractor so desired he could construct a pavement within the specifications of the ordinance which would be only suitable for light traffic and if used for heavy traffic would break down at once. It appears from the evidence that Lake street is a heavy-traffic street. The ordinance provides that the mixture of the binder course shall be by heating the broken limestone, the sand and asphaltic cement, and that such mixture shall contain by weight five per cent of bitumen soluble in carbon disulphide, thirty per cent sand and sixty-five per cent stone. This mineral filler is therefore made definite, and we fail to see how there could be a use of "more or less" mineral filler by the contractor if he conforms to the specifications of the ordinance, as Lamson testified would be necessary in order to create different kinds of pavement. The specifications also provide the exact proportions of bitumen soluble, mineral dust and sand to be used for the wearing surface, and we fail to see how there could be a variation in the mixture of the asphaltic cement or the mineral filler. In the case of *Chicago Union Traction Co.* v. *City of Chicago*, 223 Ill. 37, the wearing surface of the pavement to be constructed was simply described as "asphaltic cement," and it was there held that the term was sufficiently certain and was a substantial compliance with the statute. In *Gage* v. *City of Chicago*, 207 Ill. 56, an ordinance was held sufficiently specific that required asphaltum obtained from Pitch Lake, Trinidad, or asphaltum equal thereto in quality for paving purposes. In *Chicago Union Traction Co.* v. *City of Chicago*, 222 Ill. 144, the use of the term "asphaltic cement" in the paving ordinance was held not to render the paving ordinance uncertain though the proportions of the ingredients were not expressly specified. Specification of material in the alternative is permissible. *City of Olney* v. *Baker*, 310 Ill. 433.

325—29

It is claimed that the court erred in not sustaining the motion in arrest of judgment because the commissioner who spread the assessment was appointed two days before the filing of the petition by the village, and therefore his appointment was invalid and the court was without jurisdiction. No objection was made in the trial court to the appointment of the commissioner. The question was not raised in the motion for new trial or in the motion in arrest of judgment. Such a question cannot be raised for the first time on appeal. Furthermore, section 38 of the Local Improvement act, referred to by appellant, does not require that the commissioner be appointed after the petition is filed. The words in that section, "upon the filing of such petition," refer to the time of making the assessment and not to the time of making the appointment. The commissioner was appointed on April 21, 1924, and the certificate of appointment was filed on the same day the petition was filed by the village, which was two days after the appointment of the commissioner was made by the president of the board of local improvements. There is nothing in the statute that requires the appointment to be made after the petition was filed, and the appointment was valid.

It is also contended by appellant that the court erred in not sustaining the objection to the affidavits of mailing and posting notices. The mailing and posting of notices in a special assessment proceeding are the process by which the property owners are brought into court on the petition for confirmation of the assessment roll. These notices can be waived, and are waived by general appearance. Appellant's appearance was general, and its objection was properly overruled.

The objection that the property of appellant was not benefited by the improvement as much as it was assessed is settled by the court. Each party offered on that question one witness only. Both were experts, the witness for the village testifying, in substance, that every tract of ap-

pellant's property was benefited as much or more than it was assessed. The witness for appellant testified that the tract last above described was benefited by the improvement to the amount of one-fourth of the entire amount assessed against all of appellant's property, or $1477.97, and that none of the other tracts were benefited in any amount. Each witness based his conclusion as to the question of benefits to the property upon the theory that the highest and best use of all the property,—both vacant property which was used for storage purposes, only, and all other parts of the property without regard to its improvement,—was for railroad purposes, its present use, and that such use would be the only use that it would be put to in the future. Both witnesses used the expression "market value" in referring to the property, and stated that such market value would or would not be increased by the improvement, etc., but both witnesses meant by the use of the term "market value" market value for railroad purposes only. Neither of them valued any of the property as vacant property, and referred to its market value as market value for any and all purposes. The objection by appellant to the testimony of the village's expert witness on the ground that by market value of the property, or of any part of it, he meant market value for any and all purposes, or for any purpose except railroad purposes, was properly overruled by the court. We see no reason for setting aside the finding of the court upon the question of benefits to the property.

We do not think there is merit in any of the objections raised by appellant and overruled by the court, and the judgment of the county court is affirmed.

*Judgment affirmed.*