(No. 19799.

THE CITY OF PEKIN, Appellee, *vs.* A. M. GRUSSI *et al.*
Appellants.

*Opinion filed February 21, 1930.*

CHESTER F. BARNETT, (O. A. SMITH, *pro se,*) for appellants.

C. I. MARTIN, Corporation Counsel, (C. L. CONDER, and WILLIAM A. POTTS, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

From a judgment of the county court of Tazewell county confirming an assessment roll for the improvement of certain streets of the city of Pekin, one hundred and eighty property owners who filed objections to the assessment have appealed, assigning as error the overruling of their legal objections.

The improvement contemplated was of portions of Eighth, Willow, Hamilton, Charlotte, Henrietta, State, Catherine, Caroline, Market, Ann Eliza, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth and Sixth streets, by paving the roadways of the streets and intersections described, for the full width between curbs, with a re-inforced Portland cement concrete pavement, by curbing with a concrete combination curb and gutter, by constructing necessary storm sewers, inlets and connections, by making necessary adjustments to grade of sidewalks at paved and unpaved street approaches, and by making necessary adjustments to grade of existing manhole and inlet covers in the area of the pavement. It was originated by the board of local improvements on December 26, 1928, by adopting a first resolution and fixing the time for its public consideration at nine o'clock A. M. of Wednesday, January 9, 1928, and the place in the council chamber of the city hall. The public hearing was held on January 9, 1929, at the hour and place named.

The first objection was, that the board did not fix a day and hour for the public consideration of the resolution not less than ten days after its adoption, as required by section 7 of the Local Improvement act. Notice that the meeting would be held on January 9, 1929, at the hour and place stated in the resolution, was duly given, the meeting was held at that time and place, and the board adopted a resolution adhering to the proposed scheme. for the improvement provided in the original resolution. The objection that the first resolution fixed no date for the pub-

lic meeting refers to the obvious clerical error in writing "1928" instead of "1929." If no year had been mentioned the notice would have been sufficient. January 9, 1928, was impossible. It did not fall on Wednesday and it was past. Wednesday, January 9, could refer only to 1929, for January 9 fell on Wednesday in 1929 and will not do so again for several years. The object of fixing the time and place and giving notice was to enable persons interested to know when and where to attend, and fixing the date on Wednesday, January 9, and the council chamber as the place, gave the needed information.

The second objection was, that there were substantial variances between the estimate presented to the city council with the ordinance and the estimate made by the president over his signature and adopted by the board of local improvements in its resolution as originally made and adhered to at the public meeting. These variances are, that the estimate presented to the council contains an introductory paragraph describing the proposed improvement in general terms, which was not a part of the original estimate; that in the original estimate there was an item of $59,200 for combined curb and gutter, and included in the item were "one-half-inch expansion joints," which latter item was omitted from the estimate presented to the council; that in the original estimate was an item of $485 for 970 lineal feet of concrete header and alley returns, while the words "and alley" were omitted from the estimate presented to the council; and that in the original estimate there was an item of $17,950.90 covering cost of making and collecting assessments, with the limitation that it be "not in excess of six per cent," while in the estimate presented to the council the limitation was "not in excess of five per cent."

The law is that the estimate presented to the city council must be substantially the same as the original estimate unless a change has been made at the public hearing. (*City*

*of Marion* v. *Sisney,* 252 Ill. 421.) The introductory paragraph which appears in the second estimate and not in the first neither added to nor took from the estimate anything material and is of no importance. Expansion joints are recognized as a part of every properly constructed concrete pavement to enable it to withstand changes of temperature—as necessary as the sand, gravel or cement contained in them. They are just as necessary to a combined curb and gutter as to a pavement, and it was immaterial whether or not they were specifically provided for in the estimate. (*Patton* v. *Village of Palestine,* 304 Ill. 489.) The item $485 was a minor item when compared with the total estimated cost of the improvement, which was $391,329.62. The amount was the same on both estimates. The item as it appears in the second estimate is: "970 lineal feet of concrete header, 10" by 12", in place at unpaved street returns, at fifty cents per lineal foot." The provision of the ordinance relating to the item is: "that there shall be placed at the end of all pavement and pavement returns, where the same does not adjoin or abut existing pavement, soft-steel protection plates or concrete headers, as hereinafter described and set forth. * * * The pavement ends other than at railroad crossings or where the same abuts or adjoins other pavement now in place, as aforesaid, shall be protected by constructing concrete headers ten inches in depth the full width of the pavement." The first estimate showed the item to include both street and alley returns. The profiles show that the headers are to be placed at the ends of the pavement. If headers are to be placed at street returns, only, the estimate is too high; if at both street and alley returns, as the ordinance provides, the estimate is slightly too low, so far as linear feet of headers are concerned. Construing the ordinance and estimate together, it is clear that headers are to be placed at the ends of pavement at both street and alley returns. That the estimate is not absolutely accurate but is approximately so

is not important, as its purpose is to give the property owners a general idea of what the substantial component elements of the proposed improvement will cost. (*Harmon* v. *Village of Arthur,* 309 Ill. 95; *City of Ottawa* v. *Hulse,* 332 id. 286.) The excess or deficiency in this item, as shown by the profiles, it is stated in the briefs, would be less than $100, which is about one-fortieth of one per cent of the total cost of the improvement. We will not declare void an ordinance for an improvement where an item complained of is trifling when compared with the entire cost of the improvement. (*Patton* v. *Village of Palestine, supra.*) The remaining item involved in this objection, $17,950.90 for cost of making and collecting the assessment, was the same in amount in both estimates. The limitation not to exceed six per cent of the cost is created by section 94 of the Local Improvement act. The amount is less than five per cent of the estimated cost and still further within the six per cent, which is all that the statute requires. The court did not err in overruling the second objection, for there was no substantial variance between the two estimates.

No argument is made on the third objection. The fourth was, that in fixing the limits of the assessment district in the ordinance the city council grossly abused its discretion, in that it included separate and distinct improvements of separate and distinct streets, the improvement of each of said streets, or of some of them, not benefiting property situated on other streets. And the fifth objection is similar to the fourth. The objections have for their basis the fact that two railroads paralleling each other pass through the district, and the proposed paving of the streets which they cross terminates two feet from the rail on either side of the railroads; that the streets are of different widths, and the parkways to be improved on some are wider than on others, and this inequality is more glaring where there are no sidewalks, as is the case in many places

in the district; that there are existing drainage facilities on most of the streets, and new catch-basins, inlets and drains are to be constructed in a part of the district and none in another part. There is no evidence to justify holding that the council abused its discretion. "The necessity for an improvement of this character is committed by the legislature to the judgment of the city council, and that judgment is conclusive unless the evidence clearly satisfies the court that the council's action is so unreasonble and oppressive as to render it void. If there is room for a reasonable difference of opinion the action of the council is final. The presumption always exists in favor of the validity of an ordinance passed by competent legal authority." (*City of Chicago* v. *Thielans,* 334 Ill. 231.) The fact that certain of the streets are intersected by railroads, of itself has no probative force. The fact that parkways along certain streets are slightly wider than those along other streets, without more, does not show that it will be more expensive to grade one parkway than another, and such new drains as are provided are for the purpose of caring for surface water and may well be for the benefit of the entire district. There is no evidence to the contrary, and the burden was on the appellants to prove facts showing that the ordinance was unreasonable. No such evidence was produced, and the trial court did not err in overruling the objections.

The sixth objection was, that the ordinance does not specify with sufficient particularity the nature, character, locality and description of the proposed improvement, and the objection recites the particulars in which the ordinance is said to be so defective. The ordinance referred to the maps, plans and profiles of the district and improvement which accompanied it and made them a part of the ordinance. The first specification is not insisted on. The second and third were as follows:

"(2) The reference in said ordinance to the width and location of Hamilton street between Eighth and Fourteenth

streets is a description which varies materially from the width and location of said street as it actually exists. By reason of such misdescription the center line of pavement on said Hamilton street cannot be located from the terms of the ordinance, and the initial starting points of the improvement of those streets having their beginning on the north side of Hamilton street cannot be located from the terms of the ordinance.

"(3) The reference in said ordinance to the width and location of Charlotte, Henrietta, State, Catherine, Caroline, Market, Ann Eliza and Margaret streets are descriptions which vary materially from the width and location of said streets as they actually exist. By reason of such misdescriptions the center line of pavement on said streets cannot be located from the terms of the ordinance."

The maps, plans and profiles which accompanied the ordinance are not shown in the abstract. The objectors showed in evidence that surveying from a stone set for the northwest corner of the east half of the southwest quarter of section 35, which has been recognized by surveyors as marking the section line for a great many years, and locating lots and streets of the Campbell, Durly & Newhall addition to the town of Pekin as originally platted, with reference to that stone, the results are not the same as shown on the map of the improvement district which accompanied the ordinance. The abstract shows that Campbell, Durly & Newhall addition was located with reference to a stone fixed in the ground at the northwest corner of lot No. 6 in block No. 1, which is not the stone which formed the basis for the survey shown by the appellants' evidence, which would discredit that survey. However, certain of the streets of this district as they actually exist are wider than shown on any recorded plat, and the streets as they actually exist have been used as streets for more than twenty years and the property lines adjoining them are well defined. There is no evidence that the various streets and lots in this im-

provement district as they actually exist are not as shown on the maps of the district which were a part of the ordinance. Eighth street is one of the streets whose location, in fact, is not shown on any record. Its east and west lines are made the termini of the improvement on certain other streets. The improvement on Eighth street extends from the north line of Broadway and Margaret streets to within two feet of the south rail of the Cleveland, Cincinnati, Chicago and St. Louis railroad and from the south line of Willow street to within two feet of the north rail of the Atchison, Topeka and Santa Fe railroad. Broadway is a paved street, and the rails of the railroad are also fixed monuments. The length of the improvement in Eighth street is shown by the plans and profiles to be 2580 feet, which is the length of the improvement as shown on the ground, and there is no evidence that the side lines of Eighth street and Willow street as they actually exist are not well defined in fact. There is no evidence that the survey on which the proposed improvement is based is not a true survey of streets and alleys as they exist, and it is of no importance that the survey cannot be identified with any recorded plat or survey. It is sufficient if its lines and points can be identified by reference to existing monuments, such as definite street lines, railroad tracks and existing pavements. (*Village of Oak Park* v. *Chicago and West Towns Railway Co.* 325 Ill. 438.) The burden of proof was on the appellants to sustain their objection and no evidence which they produced tended to do so. The court properly overruled the objection.

The fourth, fifth and sixth specifications assigned under objection 6 question the sufficiency of the ordinance to show the proposed connections of sewer inlets with existing sewers, and the fixing of grades so that the bottom of existing sewers, manholes and inlets can be located and new drains and inlets be connected and adjusted therewith. The estimate contains an item for 3000 feet of 10-inch vit-

rified sewer-tile in place. The ordinance provides for the construction of sewer inlets at all places along the line of the improvement necessary to properly drain and take care of the surface water falling upon the streets proposed to be improved, at such points as shown on the plans and profiles attached. The specifications provide that there shall be constructed along the lines of the improvement, brick sewer inlets, complete with inlet top and outlet, "as specified and shown on the detailed plans attached, which said inlets shall be connected to the sewer system." However, whenever necessary, the contractor shall re-adjust any existing fixtures of like nature, or any existing manholes, catch-basins and inlets, to proper grade with the improvement. At the intersections of the streets white circles are shown at the curbs, with either broken or solid lines leading from them to the circles showing the manholes, the dotted lines indicating existing drains and the solid lines indicating drains to be constructed with the improvement. The only drainage shown on the plans and profiles is from the catch-basins as they shall be constructed, to manholes. Old inlet tops are to be used to the number of 146. The minimum grade of the drains from inlet basin to manhole, as shown by the plans and profiles, is one per cent. The drains are to be laid in the trenches at an average depth of three and a half to four feet. The distances from catch-basins to sewers or manholes are not shown in figures on the plans. The depth of the sewers was not shown. There is nothing on the plans to show that they were drawn to a scale. The civil engineer, Fitzgerald, under whose directions the plans were made, testified, over objection, that they were drawn to a scale of one inch to 40 feet horizontal, one inch vertical to four feet vertical. In support of the competency of this testimony counsel for the appellee cite the cases of *Village of Hyde Park* v. *Andrews*, 87 Ill. 229, *City of Bloomington* v. *Davis*, 309 id. 20, and *City of Harvard* v. *Roach*, 314 id. 424,

but those cases merely hold parol evidence competent to explain plats and plans and sewers and the notations on them. They do not hold that parol evidence may be used by way of addition or supplement, as was attempted here. It is necessary that the ordinance and the estimate, taken with the plat, sufficiently describe the improvement without the introduction of parol testimony except to explain the meaning of the plat. It is claimed that without the aid of the parol testimony that the map was drawn to a scale there is no way to determine whether the total length of tile required will not exceed the 3000 feet mentioned in the estimate or whether the same can be laid within the amount of $3000, its estimated cost, laid complete from inlets to sewer manholes. Such an ordinance does not sufficiently describe the improvement. *City of Bloomington* v. *Davis, supra; City of Harvard* v. *Roach, supra.*

The depth of the existing sewers is of no importance, for the inlet drains are from inlet to manhole at a depth of three and a half to four feet, and not to the sewer. The plans show the location of inlets and manholes but not the distances between. Nevertheless, inlets and manholes may be located on the ground because of their positions as related to streets and other parts of the improvement. The ordinance, estimate, plans and profiles are therefore sufficient, for it is only a matter of measurement to locate the inlets and manholes and the distance between. The experienced engineer, Backes, testified: "The diameter of the inlet is given, the thickness of the walls of the inlet is given. From that, one is able to determine the distance that the outlet pipe is from the center of the inlet basin. By simple geometry one is able to determine the length or distance from the arc of the radius at the street intersection to the center of the manhole, and by deducting the two distances, half the diameter of the manhole and half the diameter of the inlet basin, one is able to arrive at the correct distance or length of inlet pipe." It is a general

rule that a description is sufficiently definite if a competent engineer could locate the points from the description given. (*Village of Marissa* v. *Jones,* 327 Ill. 180.) It is argued by the appellants that measuring a straight line from Margaret street at Twelfth street, taken, for example, to Ann Eliza street at Twelfth, would not show the length of the drain, because the surface elevation of Margaret and Twelfth streets is 143.6 and descends to 139.9 just north of the railroad, and then ascends to 142.6 at the top of the manhole at the corner of Ann Eliza and Twelfth streets, where the sewer with which the drain is to be connected is located. The drain is to be connected with the sewer through the manhole. With the data given on the plans and profiles and ascertainable by inspection and measurement it is a matter of simple mathematical calculation to ascertain at what depth the line of tile would meet the manhole and what the length of the line would be. The court did not err in overruling the objection relating to the sewer connections.

The seventh and eighth specifications under objection 6 are to the effect that existing parkways required in this improvement to be graded are insufficiently specified in the ordinance. At some places there are sidewalks along the proposed improvement and at other places not. The ordinance provides: "The parkways along each side of said streets to be paved shall be graded on a uniform slope from the top of the curb to the top of existing sidewalks, or where there are no sidewalks in place then back to the property line on a rising grade of six (6) inches vertical to twelve (12) feet horizontal." The location and width of existing sidewalks were not shown. The appellants contend that the failure to show them left indeterminate the amount of work necessary to be done to grade the parkways. There was no evidence that cost of grading would be increased or diminished by the existence of sidewalks, and the objection was properly overruled.

The ninth specification of the sixth objection concerns adjustment to new grade of existing sidewalks at street intersections, for which the ordinance provides. There is nothing in the ordinance or the plans to show where such adjustments will be necessary, and the objection is that in this the ordinance is deficient. The eleventh specification is of like kind and involves the removal of old curbs, for which the ordinance provides, without showing where such curbs exist. The estimate includes an item of $23,000 for grading, including removal of cross-walks and curbing, and an item of $930 for adjusting sidewalks at street intersections. With present grading machinery, removing sidewalk and curbing is properly a part of a grading operation. The re-laying of sidewalks at street intersections on the new grade is so small an item as compared with the total involved in this improvement that it may be considered merely incidental. The average assessment for this improvement on inside lots of the width of 50 feet and the depth of 95 feet is $310. The part of that represented by the re-laying of sidewalks at street intersections is negligible.

The tenth specification of the sixth objection involves the adjustment of existing street pavements with the proposed pavements at street intersections, for which the ordinance makes provision. Existing pavements are shown where they exist but their grades are not shown. There was no item in the estimate to cover such adjustments. There was no evidence that any such adjustments were actually required. Where street paving exists, necessarily its grade is a matter of record. A pavement is also itself a fixed monument. There was no evidence that there was any difference in grade between any existing pavement and the proposed pavement where they join. The objection in this respect had no merit.

The seventh objection was that the estimate presented to the city council was insufficient. Under this objection a number of specifications were assigned, only a part of

which are presented in the argument. One item in the estimate was as follows: "46,000 cubic yards of excavation, including removal of cross-walks and curbing; grading, tamping, shaping and rolling for the preparation of the pavement sub-grade, grading and smoothing parkways and unpaved intersecting street approaches, and including adjustment to grade of sewer manhole covers, at fifty cents per cubic yard, $23,000." It is contended that the cost of excavation in preparation for the improvement and the cost of grading, tamping, shaping and rolling sub-grade should have been shown in a separate item, for the reason that those things were named in section 1 of the ordinance as a component element of the cost of the improvement; that grading and smoothing parkways and unpaved street approaches ought to have been itemized separately, also, because they, too, are named in the ordinance as a component element of the improvement; and that the cost of adjustment to grade of existing sewer manhole covers is an element of the improvement which also ought to have been itemized separately, for it was also named in the ordinance as an element; and with reference to this item it is also argued that it is in its nature different from other parts of the work named in the item and its inclusion with them was incongruous; that there is nothing in the estimate covering the cost of the sub-grade for the combined curb and gutter, for which the ordinance provides, as the item which we have quoted specifically refers to the sub-grade of the pavement and there is no other item dealing with the sub-grade of combined curb and gutter; that there is no estimate of the cost of adjusting existing pavements to the new pavements where they join. "The estimate is sufficiently itemized, so far as the property owners are concerned, if it is specific enough to give them a general idea of the estimated cost of the substantial component elements of the improvement." (*Village of Northbrook* v. *Sterba,* 318 Ill. 360.) The ordinance contemplated that the prepa-

ration of sub-grade for paving and combined curb and gutter should be a single operation. Its provisions in relation thereto were as follows:

"*Grading*—The roadways herein provided to be improved shall be so graded that after being thoroughly rolled and compacted the surface of the pavement sub-grade thereof shall conform to a grade seven (7) inches below the grade herein provided for the top surface of the pavement slab, and the sub-grade for the curb, as hereinbefore provided, shall be horizontal and twelve (12) inches below the grade herein designated for the top of the finished curb, and where fills are to be made they shall be made in and not to exceed one (1) foot layers."

No difference in character of sub-grade was proposed. In this respect the case is distinguished from the cases cited by the appellants, (*City of Harvard* v. *Roach, supra, City of Waukegan* v. *Wetzel,* 261 Ill. 498, and *Lyman* v. *Town of Cicero, 222* id. 379,) wherein it was held that the preparation of sub-grade of combined curb and gutter could not be included in the estimate of the cost of combined curb and gutter in place. The whole process of grading was properly combined in the one item of the estimate. The adjustment of manhole covers to the new grade was simply a very minor element of the preparation of the grade to receive the pavement. The provision of the specifications relating to the adjustment of the old and new pavement of the improvement is as follows: "When the surface of the specified pavement at the ends of street and alley returns does not meet the grades of existing pavements, approaches shall be constructed by removing and re-laying at least ten (10) feet of such pavement, to make the existing surface meet the finished surface of the specified pavement." If there were no pavements which it was necessary to adjust no estimate of the cost of adjustment was necessary. No evidence of any instance where old and new pavements meet at different grades has been called to our attention.

It is contended that the court erred in permitting the engineer, Backes, to testify to certain opinions. We have not found it necessary to consider his testimony except as to the possibility of determining from the plans the distances from inlets to manholes. On that subject his testimony was clearly proper to be considered.

The judgment is affirmed.  *Judgment affirmed.*